# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re                                          )    Chapter 11
                                               )
DURA AUTOMOTIVE SYSTEMS,INC.,                  )    Case No. 06-1122 (KJC)
et al.,                                        )
                                               )    Jointly Administered
                                  Debtors,     )
                                               )
                                               )

*FILED 2008 MAY 21 PM 2:43 CLERK US BANKRUPTCY COURT DISTRICT OF DELAWARE*

# NOTICE OF APPEAL

James W. Korth, Creditor and Equity Holder appeals under 28 U.S.C. 158 (b) from the order of

Judge Kevin J. Carey confirming the Revised Joint Plan of Reorganization for the above

captioned Debtor entered on the 13th day of May 2008.

The names of all parties to the order are as follows:

Adwest Electronics Inc., Atwood Automotive, Inc., Atwood Mobile Products, Inc.,

Automotive Aviation Partners,LLC, Creation Group Holdings, Inc., Creation Group

Transportation, Inc., Creation Group, Inc., Creation Windows, Inc., Creation Windows, LLC,

Dura Aircraft Operating Company, LLC, Dura Automotive Canada ULC, Dura Automotive

Systems (Canada), Ltd., Dura Automotive Systems Cable Operations, Inc., Dura Automotive

Systems, Inc., Dura Automotive Systems of Indiana, Inc., Dura Brake Systems, L.L.C., Dura

British Columbia ULC, Dura Cables North LLC, Dura Canada LP, Dura Fremont L.L.C., Dura

Gladwin L.L.C., Dura Global Technologies, Inc., Dura G.P., Dura Holdings Canada LP, Dura

Holdings ULC, Dura Mancelona L.L.C., Dura Operating Canada LP, Dura Operating Corp.,

Dura Services L.L.C., Dura Shifter L.L.C., Dura Spicebright, Inc., Kemberly, Inc., Kemberly,

LLC, Mark I Molded Plastics of Tennessee, Inc., Patent Licensing Clearinghouse L.L.C. Spec-

Temp, Inc., Trident Automotive Canada, Co., Trident Automotive L.L.C., Trident Automotive,

L.P., Trident Automotive Limited, and Universal Tool & Stamping Company, Inc.

The names, addresses and telephone numbers of their attorneys are:

Daniel J. DeFranceschi
Jason M. Madron
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington Delaware 19801
Telephone (302) 651-7700
Facsimile (302) 651-7701

-and-

Richard M. Cieri
Marc Kiesselstein, P.C.
Roger J. Higgins
Michael B. Slade
Ryan Blain Bennett
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: 312 861-2000
Facsimile: 312 861-2200

Dated:  May 20, 2008

James W. Korth – For Himself
3339 Virginia Street
Suite 104
Miami, Florida 33133
305 668-8485

# *ORIGINAL*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Dura Automotive Systems, Inc., et al.,[1] | ) | Case No. 06-11202 (KJC) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | **Re: Docket No. 3317** |

## ORDER CONFIRMING DEBTORS' REVISED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned Debtors having:

- filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on October 30, 2006 (the "Petition Date");

- filed on May 12, 2008, *The Debtors' Revised Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (with Further Technical Amendments)* (the "Plan") [Docket No. 3319], and on March 31, 2008, the *Disclosure Statement for the Debtors' Revised Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [Docket No. 3025] (the "Disclosure Statement"), approved by this Court on April 4, 2008 [Docket No. 3069];[2]

- distributed solicitation materials on or before April 11, 2008, pursuant to and consistent with the *Order (A) Approving Revised Disclosure Statement, (B) Fixing the Voting Record Date, (C) Scheduling Certain Hearing Dates and Deadlines in Connection with the Proposed Confirmation of the Debtors' Joint Revised Plan of Reorganization, and (D) Approving the Revised Solicitation Package and Notices* [Docket No. 3069] (the "Scheduling and Disclosure Statement Order");

- filed on April 28, 2008, the *Plan Supplement in Support of Revised Plan of Reorganization* [Docket No. 3213], and on May 12, 2008, the *Amended Plan Supplement in Support of Revised Plan of Reorganization* (the "Plan Supplement"); and

- filed on May 8, 2008, the *Debtors' Memorandum of Law in Support of Confirmation of the Debtors' Revised Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (with Technical Amendments)* (the "Confirmation Brief") [Docket No. 3277]; and

---

[1]   The "Debtors" comprise the entities set forth in the *Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing Joint Administration of the Debtors' Chapter 11 Cases*, entered on October 31, 2006 [Docket No. 68].

[2]   Capitalized terms not defined herein shall have the meanings assigned to them in the Plan or Disclosure Statement, as applicable.

This Court having:

- set May 13, 2008, at 10:00 a.m. Eastern Time as the date and time of a hearing pursuant to Fed.R.Bankr.P. 3017 and Fed.R.Bankr.P. 3018 and sections 1126, 1128 and 1129 of the Bankruptcy Code to consider the Confirmation of the Plan (the "Confirmation Hearing");

- reviewed the Plan and Disclosure Statement;

- considered the *Declaration of Lawrence A. Denton In Support of Confirmation of the Debtors' Revised Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* and *Declaration of C. Timothy Trenary, Chief Financial Officer of Dura Automotive Systems, Inc., in Support of Confirmation of the Debtors' Revised Plan,* each filed as appendices to the Confirmation Brief;

- considered the *Declaration and Expert Report of Durc Savini Supporting the Debtors' Memorandum of Law in Support of Confirmation of the Debtors' Revised Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Savini Report"), and the *Declaration and Expert Report of Anthony C. Flanagan Supporting the Debtors' Memorandum of Law in Support of Confirmation of the Debtors' Revised Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Flanagan Report," and, collectively with the Savini Report, the "Expert Reports"), each filed as appendices to the Confirmation Brief;

- considered the *Affidavit of Service of Kurtzman Carson Consultants LLC,* filed on April 16, 2008 [Docket No. 3157], and *Affidavit of Service of Financial Balloting Group LLC of Solicitation Packages and Non-Voting Notices on Holders of Public Securities,* filed on April 18, 2008 [Docket No. 3162] (collectively, the "Affidavits of Service");

- considered the *Affidavit of Alison M. Tearnen Regarding Votes Accepting or Rejecting the Debtors' Revised Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code,* the *Affidavit of Adam Sanderson Regarding Votes Accepting or Rejecting the Debtors' Revised Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code,* and the *Certification of Jane Sullivan With Respect to the Tabulation of Votes on the Debtors' Joint Plan by Holders of Noteholder Claims in Class 3,* each filed as appendices to the Confirmation Brief (collectively, the "Voting Affidavits");

- considered all other pleadings, exhibits, statements, documents and filings regarding confirmation of the Plan ("Confirmation"); and

- heard and considered the statements of counsel and all other testimony and evidence proffered and/or adduced at the Confirmation Hearing, and in respect of, Confirmation of the Plan.

After due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following findings of fact, conclusions of law and orders:[3]

## I.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction and Venue

a)     On the Petition Date, each Debtor commenced a chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code. Venue in the District of Delaware was proper as of the Petition Date and continues to be proper. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

b)     Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

### Judicial Notice

c)     The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of this Court and/or its duly appointed agent (the "Docket"), including, without limitation, all pleadings and other documents on file, all orders entered, and the transcripts of,

---

[3]     This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bankr.P. 7052 and 9014. Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact. Further, any findings of fact and conclusions of law announced on the record in open court are incorporated by reference herein.

and all evidence (that was not subsequently withdrawn) and arguments made, proffered or adduced at, the hearings held before this Court during the pendency of the Chapter 11 Cases.

**Burden of Proof**

      d)      The Debtors, as the Plan proponents, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard in this Court. The Court also finds that the Debtors have satisfied the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**Solicitation Procedures Authorization**

      e)      On April 4, 2008, this Court entered the Scheduling and Disclosure Statement Order that, among other things: (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Fed.R.Bankr.P. 3017; (b) fixed time for voting to accept or reject the Plan; (c) fixed the date and time for the commencement of the Confirmation Hearing; (d) established the objection deadline and procedures for objecting to the Plan; (e) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"); and (f) established the record date and certain procedures for soliciting and tabulating votes with respect to the Plan.

**Service of Solicitation Materials**

      f)      As evidenced in the Voting Affidavits, the Debtors complied with the service requirements and procedures approved in the Scheduling and Disclosure Statement Order.

**Publication of Confirmation Hearing Notice**

      g)      As evidenced in affidavits of publication filed with this Court, the Debtors published the Confirmation Hearing Notice in the publications and on the dates indicated below: *The Wall Street Journal* on April 16, 2008 [Docket No. 3245]; *The New York Times* on April 16,

4

2008 [Docket No. 3244]; *The National Post* on April 16, 2008 [Docket No. 3243]; *The Detroit News and Detroit Free Press* on April 16, 2008 [Docket No. 3242]; *Automotive News* on April 21, 2008 [Docket No. 3241]; and *The Globe and Mail* on April 16, 2008 [Docket No. 3240].

## *Voting Affidavits and Solicitation*

h)      On May 8, 2008, the Debtors filed with this Court the Voting Affidavits certifying the method and results of the ballot tabulation for each of the Voting Classes to accept or reject the Plan.

i)      Based upon the Voting Affidavits, all procedures used to provide notice and distribute solicitation materials to the applicable holders of Claims and Equity Interests and to tabulate the ballots were fair and conducted in accordance with the Scheduling and Disclosure Statement Order, Bankruptcy Code, Federal Rules of Bankruptcy Procedure, local rules of the Bankruptcy Court for the District of Delaware, and all other applicable rules, laws and regulations.

j)      As evidenced by the Voting Affidavits, all ballots were properly tabulated. Pursuant to sections 1124 and 1126 of the Bankruptcy Code, all Impaired Classes entitled to vote on the Plan have voted to accept the Plan.

k)      Based upon the Voting Affidavits, votes for acceptance and rejection of the Plan were solicited in good faith and complied with sections 1125 and 1126 of the Bankruptcy Code, Fed.R.Bankr.P. 3017 and 3018, the Scheduling and Disclosure Statement Order, all applicable provisions of the Bankruptcy Code, and all other applicable rules, laws and regulations.

l)      Each of the Debtors and their respective directors, officers, agents, affiliates, representatives, attorneys and advisors have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Scheduling and Disclosure Statement Order.

5

*Plan Supplement Notice*

m)     The documents identified in the Plan Supplement were filed as required and notice of such documents was good and sufficient under the circumstances and no other or further notice is or shall be required.

*Plan Modifications*

n)     The technical modifications to the Plan (reflected in the Plan as filed on May 8, 2008, and May 12, 2008) constitute non-material changes, and/or changes with respect to particular Claims or Equity Interests by agreement with holders of such Claims or Equity Interests, and/or changes with respect to particular Claims or Equity Interests that do not materially adversely affect or change the treatment of any Claims or Equity Interests and require no additional or further solicitation of votes on the Plan. Such modifications do not materially negatively impact the treatment of, and/or distributions to, holders of Allowed Claims under the Plan. Accordingly, pursuant to section 1127 of the Bankruptcy Code and Fed.R.Bankr.P. 3019, these modifications do not require additional disclosure pursuant to section 1125 of the Bankruptcy Code or re-solicitation of votes pursuant to section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change any previously cast acceptances or rejections.

*New Credit Facilities*

o)     The Exit Credit Facility and New Money Second Lien Loan (collectively, the "New Credit Facilities") are essential elements of the Plan, and entry into the New Credit Facilities is in the best interests of the Debtors' Estates and the Reorganized Debtors. The Reorganized Debtors have exercised reasonable business judgment in determining to enter into the New Credit Facilities, and the Debtors have provided adequate notice thereof. The New Credit Facilities have been negotiated in good faith and at arm's-length, and any credit extended,

6

letters of credit issued for the account of, and loans made to the Reorganized Debtors pursuant to the New Credit Facilities shall be deemed to have been extended, issued, and made in good faith.

### Compliance with the Requirements of Section 1129 of the Bankruptcy Code

Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

p)      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan designates Classes of Claims and Equity Interests, other than Administrative Claims, DIP Facility Claims and Priority Tax Claims.[4]  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.  Valid reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

q)      Pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies all Claims that are not Impaired and specifies the treatment of all Claims and Equity Interests that are Impaired.  Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan also provides the same treatment for each Claim or Equity Interest within a particular Class.

r)      Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate and proper means for the Plan's implementation.  Based upon the evidence proffered in

---

[4]     The Administrative Claims, DIP Facility Claims and the Priority Tax Claims are not required to be designated pursuant to section 1123(a)(1) of the Bankruptcy Code.

7

the Expert Reports, the Debtors will have, upon consummating the New Credit Facilities on the Effective Date of the Plan, sufficient Cash to make all payments required to be made on the Effective Date or otherwise prescribed pursuant to the terms of the Plan. Moreover, Article IV and various other provisions of the Plan specifically provide adequate means for implementing the Plan, including, without limitation: (a) continuing the corporate existence of and vesting assets in the Reorganized Debtors; (b) canceling all debt instruments and equity interests outstanding on the Petition Date; (c) issuing new securities and executing related documents; (d) creating a professional escrow account; (e) providing for corporate governance, directors and officers, and corporate action of and by the Reorganized Debtors; and (f) establishing the sources of Cash for distributions under the Plan.

s)     The Debtors' New Organizational Documents, as contained or otherwise referenced in the Plan Supplement, satisfy the requirements set forth in sections 1123(a)(6) and 1123(a)(7) of the Bankruptcy Code.

t)     The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

u)     The Plan is dated and identifies the Plan's proponents, thereby satisfying Fed.R.Bankr.P. 3016(a).

Section 1129(a)(2) – Debtors' Compliance with Applicable Provisions of the Bankruptcy Code

v)     The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 and Fed.R.Bankr.P. 3017, 3018 and 3019. In particular, the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper Plan proponents under section 1121(a) of the Bankruptcy Code. Furthermore, the solicitation of acceptances or rejections of the Plan: (i) complied with the Scheduling and Disclosure Statement

8

Order; (ii) complied with all applicable laws, rules and regulations governing the adequacy of disclosure in connection with such solicitation; and (iii) occurred only after disclosing "adequate information" to holders of Claims or Equity Interests, as section 1125(a) of the Bankruptcy Code defines that term. Accordingly, the Debtors and the Creditors' Committee, and their respective directors, officers, employees, agents, members, affiliates and Representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

Section 1129(a)(3) – Proposal of Plan in Good Faith

w)     The Debtors have proposed the Plan in good faith and not by any means forbidden by law, as required by section 1129(a)(3) of the Bankruptcy Code. In so determining, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a capital structure that will allow them to satisfy their obligations with sufficient liquidity and capital resources.

Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as Reasonable

x)     Pursuant to section 1129(a)(4) of the Bankruptcy Code, the payments to be made by the Debtors for services or for costs in connection with the Chapter 11 Cases or the Plan, as described in the Plan, or as disclosed in the Plan Supplement, have been approved by, or are subject to the approval of, this Court as reasonable.

y)     In addition, fees and expenses incurred by professionals retained by the Debtors, Creditors' Committee, Second Lien Group and Second Lien Agents (including their counsel) shall be payable according to the orders approving such firms' retention and this Confirmation Order.

9

<u>Section 1129(a)(5) – Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy</u>

z)    The Debtors provided requisite disclosures regarding proposed directors and officers of the Reorganized Debtors following Confirmation, as required by section 1129(a)(5)(A) of the Bankruptcy Code, and have also disclosed the nature of compensation of insiders who will be employed or retained by the Reorganized Debtors, as required by section 1129(a)(5)(B) of the Bankruptcy Code.

<u>Section 1129(a)(6) – Approval of Rate Changes</u>

aa)    The Debtors' current businesses do not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after Confirmation. Section 1129(a)(6) of the Bankruptcy Code thus does not apply in these Chapter 11 Cases.

<u>Section 1129(a)(7) – Best Interests of Creditors and Equity Interest Holders</u>

bb)    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis annexed to the Disclosure Statement and the other evidence related thereto that was proffered or adduced at or prior to, or in affidavits filed in connection with, the Confirmation Hearing, are persuasive and credible.  The methodology used and assumptions made in the liquidation analysis, as supplemented by the evidence proffered or adduced at or prior to, or in affidavits filed in connection with, the Confirmation Hearing, are reasonable.

cc)    With respect to each Impaired Class, each holder of an Allowed Claim or Equity Interest, as the case may be, in an Impaired Class has accepted the Plan or will receive under the Plan on account of its respective Claim or Equity Interest, as the case may be, property of a value, as of the Effective Date, that is not less than the amount that each such holder would have received if the Debtors were to have liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.

Section 1129(a)(8) -- Acceptance of the Plan by Each Impaired Class

dd)     As indicated in Article III of the Plan, the following Classes are Unimpaired and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code:

| Class Description | Class Designation |
| --- | --- |
| Other Secured Claims | 1 |

ee)     As indicated in the Voting Affidavits, every Impaired Class that was entitled to vote has voted to accept the Plan. Each of the following Impaired Classes voted in favor of the Plan:

| Class Description | Class Designation |
| --- | --- |
| Second Lien Facility Claims | 2 |
| Senior Notes Claims | 3 |
| Other General Unsecured Claims | 5A (U.S. Other General Unsecured Claims), 5B (Canadian General Unsecured Claims) |

ff)     The Plan provides that the following Classes will not receive any distribution or retain any property on account of holders' Claims or Equity Interests, and these Classes are therefore deemed to have rejected the Plan (the "Deemed to Reject Classes") pursuant to section 1126(g) of the Bankruptcy Code:

| Claims Description | Class Designation |
| --- | --- |
| Subordinated Notes Claims | 4 |
| Convertible Subordinated Debentures Claims | 6 |
| Section 510 Subordinated Claims | 7 |
| Equity Interests | 8 |

K&E 12254346.25
RLF1-3282747-1

Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

gg)    The treatment of Administrative, DIP Facility, Priority Tax, and Other Priority Claims under Plan Articles II.A, II.B, II.C and II.D, respectively, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

Section 1129(a)(10) – Acceptance By At Least One Impaired Class

hh)    As set forth in the Voting Affidavits and above, each Impaired Class, other than the Deemed to Reject Classes, has voted to accept the Plan. Accordingly, section 1129(a)(10) of the Bankruptcy Code is satisfied.

Section 1129(a)(11) – Feasibility of the Plan

ii)    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. Based upon the evidence proffered or adduced at, or prior to, or in affidavits filed in connection with, the Confirmation Hearing, the Plan is feasible and Confirmation of the Plan is not likely to be followed by any of the Debtors, the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan either liquidating or requiring further financial reorganization. Furthermore, the Reorganized Debtors will have adequate capital to meet their ongoing obligations.

Section 1129(a)(12) – Payment of Bankruptcy Fees

jj)    In accordance with section 1129(a)(12) of the Bankruptcy Code, Article XI.C of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930(a). The Reorganized Debtors will have adequate means to pay all such fees.

Section 1129(a)(13) – Retiree Benefits

kk)    In satisfaction of section 1129(a)(13) of the Bankruptcy Code, Article V.F.3 of the Plan provides for the timely payment post-Confirmation of retiree benefits (as that term is

12

defined in section 1114 of the Bankruptcy Code), if any, to the extent such retiree benefits are payable by the Reorganized Debtors.

<u>Sections 1129(a)(14), (15) and (16)</u>

ll)    The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations. Sections 1129(a)(14), (15) and (16) of the Bankruptcy Code thus do not apply in these Chapter 11 Cases.

<u>Section 1129(b) – Classification of Claims and Confirmation of Plan Over Nonacceptance of Impaired Class</u>

mm)    The classification and treatment of Claims in the Plan is proper pursuant to section 1122 of the Bankruptcy Code and does not discriminate unfairly pursuant to section 1129(b)(1) of the Bankruptcy Code.

nn)    Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not all Impaired Classes have voted to accept the Plan - if all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. All Classes of Impaired Claims have voted to accept the Plan other than the Deemed to Reject Classes.

oo)    There is no Class of creditors or Equity Interests junior to the holders of Claims or Equity Interests in the Deemed to Reject Classes that will receive or retain any property under the Plan on account of their Claims or Equity Interests. Accordingly the requirements of sections 1129(b)(2) of the Bankruptcy Code are satisfied with respect to the Deemed to Reject Classes, and the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to such Classes.

pp)    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129(b) of the Bankruptcy Code.

13

### *Principal Purpose of the Plan Is Not Avoidance of Taxes*

qq)     In accordance with section 1129(d) of the Bankruptcy Code, the principal purpose

of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the

Securities Act of 1933 (15 U.S.C. § 77e).

### *Limited Substantive Consolidation*

rr)     The substantive consolidation of the U.S. Debtors for the limited purposes of Plan

voting, confirmation and distributions contemplated by Article IV.A of the Plan will result in:

- the payment of Allowed Claims against U.S. Debtors in all Classes receiving recoveries from a single, common pool of assets;

- each holder of an Allowed Claim against U.S. Debtors having a single Allowed Claim when such holder's Claims against U.S. Debtors arise from or are related to the same underlying debt, regardless of whether that holder filed or will file multiple Claims against one or more of the U.S. Debtors; and

- the priority of the classes of claims and equity interests set forth in the Plan being consistent with the "absolute priority rule" of section 1129(b)(2) of the Bankruptcy Code.

ss)     The mergers and transactions set forth in the Plan Supplement (including the

taxable sale transaction), and contemplated by Article IV.B.2 of the Plan, will:

- restructure - and simplify - the legal and corporate structures of the Reorganized Debtors as compared to the Debtors' corporate structure on the Petition Date; and

- comply with sections 1123(a)(5)(C) and (D) and all other requirements of the Bankruptcy Code.

### *Issuance and Distribution of the New Securities*

tt)     The Debtors (and each of their respective affiliates, agents, directors, officers,

employees, advisors, and attorneys) have, and upon Confirmation of the Plan are deemed to

have, participated in good faith and in compliance with the applicable provisions of the

Bankruptcy Code with regard to the distribution of the New Common Stock and Convertible

Preferred Stock under the Plan, and therefore are not, and on account of such distributions will

not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. The offering, issuance and distribution of the New Common Stock and Convertible Preferred Stock is in exchange for Claims against the Debtors, or principally in such exchange and partly for cash or property, within the meaning of section 1145(a)(1) of the Bankruptcy Code.

### *Executory Contracts and Unexpired Leases*

uu) The Debtors' decision to reject all executory contracts and unexpired leases that (i) have not expired by their own terms on or prior to the Effective Date, (ii) the Debtors have not assumed or rejected during the pendency of the Chapter 11 Cases, (iii) are not assumed pursuant to the Plan or the subject of a motion pending as of the Effective Date to assume the same, or (iv) are not listed in the Plan Supplement as executory contracts or unexpired leases to be assumed (collectively, with those executory contracts and unexpired leases specifically set forth in the Plan Supplement as certain of those to be rejected, the "Rejected Contracts") represents a valid and well-considered exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their Estates, and their creditors.

vv) Further, the Debtors' decision to assume certain executory contracts and unexpired leases pursuant to the terms of the Plan, including those set forth in the Plan Supplement (collectively, the "Assumed Contracts") represents a valid and well-considered exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their Estates, and their creditors.

ww) The cure amounts for the Assumed Contracts (the "Cure Amounts") and procedure for objecting thereto are set forth in the Plan Supplement, with such notice and procedure being proper under the circumstances.

K&E 12254346 25
RLF1-3282747-1

### *Approval of Settlements and Compromises*

xx)    Pursuant to Fed.R.Bankr.P. 9019 and any applicable state law, and as consideration for the distributions and other benefits provided under the Plan, all settlements and compromises of Claims, Causes of Action and objections to Claims that are embodied in the Plan, including but not limited to those settlements embodied at Article IX.A of the Plan, constitute good faith compromises and settlements of Claims, Causes of Action and objections to Claims, which compromises and settlements are hereby approved as fair, equitable, reasonable, and appropriate in light of the relevant facts and circumstances underlying such compromise and settlement, and are in the best interests of the Debtors and their Estates and creditors.

### *Transfers by Debtors*

yy)    The revesting, on the Effective Date, of the property of the Debtors' estates: (a) vests the Reorganized Debtors or their successors or assigns, as the case may be, with good title to such property, free and clear of all Claims and Equity Interests, except as expressly provided in the Plan, this Confirmation Order or the New Credit Facilities; and (b) does not constitute a voidable transfer under the Bankruptcy Code or applicable non-bankruptcy law.

### *Releases, Discharges and Exculpations*

zz)    The releases and discharges of Claims and Causes of Action described in Article IX of the Plan and this Confirmation Order, including, but not limited to, the releases by the Debtors set forth at Article IX.B.1 of the Plan, the third party release set forth at Article IX.B.2 of the Plan, and the exculpation provisions set forth at Article IX.C of the Plan, constitute good faith compromises and settlements of the matters covered thereby and are consensual. Such compromises and settlements are made in exchange for adequate consideration and are in the best interests of holders of Claims, are fair, necessary, equitable, and reasonable, and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan. Each of

16

the discharge, release and exculpation provisions set forth in the Plan and this Confirmation Order is: (i) within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (ii) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) an integral element of the transactions incorporated into the Plan; (iv) conferring material benefit on, and is in the best interests of, the Debtors, their estates and their creditors; (v) important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and (vi) consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

aaa)     The failure to effect the discharge, release, indemnification, and exculpation provisions described in Article IX of the Plan would seriously impair the Debtors' ability to confirm the Plan.

bbb)     The agreements of each of the Debtors, Releasees and Releasing Parties, including (a) the discharge of debt and all other good and valuable consideration paid pursuant to the Plan or otherwise; (b) the services of the Debtors' present and former officers and directors as of the Petition Date and thereafter in facilitating the expeditious implementation of the restructuring contemplated by the Plan; and (c) good faith settlement and compromise of the claims released by the third party release, constitute good and valuable consideration for, and justify the releases granted to the Releasees under Article IX of the Plan.  Such compromises and settlements are made in exchange for adequate consideration and are in the best interest of holders of Claims, are fair, necessary, equitable, and reasonable, and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan.

**Good Faith Negotiation, Implementation and Consummation**

ccc)    The Exculpated Parties participated in negotiating in good faith and at arm's length the Plan and each of the settlements and agreements embodied therein (including each exhibit of the Plan Supplement). Each of the Exculpated Parties participated in good faith in each of the actions taken to bring about, and in satisfying each of the conditions precedent to, Confirmation. In so determining, this Court has examined, among other things, the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the record of this proceeding, the Plan, the Expert Reports and all other related affidavits, pleadings, exhibits, and statements in open Court regarding Plan Confirmation.

**Satisfaction of Conditions Precedent to Effective Date**

ddd)    Based on the Expert Reports, statements of the parties in open court, and all other related pleadings, exhibits and other relevant documents, each of the conditions precedent to the Effective Date, as set forth in Article VIII of the Plan, is reasonably likely to be satisfied.

**Retention of Jurisdiction**

eee)    The Court may properly retain jurisdiction over the matters set forth in Article X of the Plan.

\*        \*        \*        \*        \*

Based on the foregoing, it is hereby ORDERED:

## II.

## ORDER

### A.    **Confirmation of the Plan**

1.    The Plan (including the Plan Supplement), substantially in the form as amended through the date hereof, and each of its provisions are approved and confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan, the Plan

Supplement, all exhibits and addenda thereto, the Docket, and any exhibits to this Confirmation Order are incorporated by reference into, and are an integral part of, this Confirmation Order. The terms of the Plan, the Plan Supplement, all exhibits and addenda thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date of the Plan. Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan or the Plan Supplement exhibits and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

**B.    Objections to Plan Overruled**

2.      Except as provided in this Confirmation Order, all objections and responses to and statements and comments regarding the Plan, and all reservation of rights included therein, to the extent not already withdrawn, waived, or settled, shall be, and hereby are, overruled on the merits.

**C.    Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent**

3.      The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

**D.    Record Closed**

4.      The record of the Confirmation Hearing is closed.

**E.    Notice**

5.      Good and sufficient notice has been provided of the Confirmation Hearing, the deadline for filing and serving objections to the Plan, cure claim estimates, injunctions and third party releases, bar dates, and other hearings described in the Scheduling and Disclosure Statement Order and the Plan, which notice has been and is hereby approved.

K&E 12254346.25
RLF1-3282747-1

## F. Plan Classification Controlling

6. The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder. The classifications set forth on the ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan: (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any creditor as representing the actual classification of such Claims under the Plan for distribution purposes; and (d) shall not bind the Debtors or the Reorganized Debtors.

## G. Executory Contracts and Unexpired Leases

7. The executory contract and unexpired lease provisions of Article V of the Plan shall be, and hereby are, approved.

8. Executory contracts and unexpired leases (including Compensation and Benefits Programs) that are rejected pursuant to the Plan (the "Rejected Contracts") are deemed rejected by the Debtors as of immediately prior to the Petition Date, and the entry of this Confirmation Order constitutes approval of each such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

9. All proofs of claim arising from the rejection of the Rejected Contracts (the "Rejection Claims") must be filed with the Voting Agent within thirty (30) days after the earlier of: (a) the date of entry of an order of this Court, which order may be this Confirmation Order, approving any such rejection; and (b) the Effective Date. Any Claims arising from the rejection of the Rejected Contracts for which proofs of claim are not timely filed within that time period will be forever barred from assertion against the Debtors or the Reorganized Debtors, their Estates and property unless otherwise ordered by this Court or as otherwise provided herein.

Except as otherwise provided in this paragraph, all Rejection Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article IX of the Plan.

10.     Executory contracts and unexpired leases (including Compensation and Benefits Programs) that are assumed pursuant to the Plan (the "Assumed Contracts") are hereby deemed assumed by the Debtors as of immediately prior to the Effective Date, and the entry of this Confirmation Order constitutes approval of all such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

11.     The Debtors shall pay the Cure Amounts in Cash as set forth in the Plan or on such other terms as the parties to each such Assumed Contract may otherwise agree. Payment of the Cure Amounts shall satisfy, in full, the Debtors obligations pursuant to section 365(b)(1) of the Bankruptcy Code. A counterparty to an Assumed Contract may file an objection to a Cure Amount by filing a proof of claim with the Voting Agent thirty (30) days after the earlier of: (a) the date of entry of an order of this Court, which may be this Confirmation Order, approving any such assumption; and (b) the Effective Date.

12.     As of the Effective Date, all Assumed Contracts, shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Reorganized Debtors, subject to the liens provided in connection with the New Credit Facilities, notwithstanding the payment of, or dispute with respect to, any Cure Amount, or provision in any such Assumed Contract (including those described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables or requires termination of such contract or lease. Other than any applicable cure payment, the Reorganized Debtors' remaining obligations arising from each such Assumed Contract shall therefore be limited solely to, from the Effective Date and thereafter, any future performance thereunder and obligations arising therefrom.

**H.**    **Plan Settlements**

13.    Pursuant to Article IX.A of the Plan, entry of this Confirmation Order shall be deemed entry of an order approving all of the Plan settlements pursuant to Fed.R.Bankr.P. 9019.

**I.**    **Exemption from Registration**

14.    The issuance and distribution of all of the New Common Stock and Convertible Preferred Stock when issued or distributed as provided in the Plan, will be duly authorized, validly issued and, as applicable, fully paid and nonassessable. The issuance of the New Common Stock and Convertible Preferred Stock is in exchange for Claims against or Equity Interests in the Debtors, or principally in such exchange and partly for cash or property, within the meaning of section 1145(a)(1) of the Bankruptcy Code. In addition, under section 1145 of the Bankruptcy Code, to the extent, if any, that the above-listed items constitute "securities": (i) the offering of such items is exempt and the issuance and distribution of such items will be exempt from Section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities; and (ii) all of the above-described items will be freely tradeable by the recipients thereof, subject to (x) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (y) the restrictions, if any, on the transferability of such securities and instruments; and (z) applicable regulatory approval.

15.    The shares of New Common Stock reserved for the Management Equity Program will be exempt from registration under the Securities Act of 1933 by virtue of section 4(2), which states that the provisions of section 5 shall not apply to transactions by an issuer not involving any public offering, and the rules contained in Regulation D promulgated thereunder.

**J.**    **Matters Relating to Implementation of the Plan**

Implementation of the Plan; Effectuating Documents

16.    In accordance with section 1142 of the Bankruptcy Code, the implementation and consummation of the Plan in accordance with its terms shall be and is, authorized and approved, and the Debtors, the Reorganized Debtors, the DIP Lenders, the Creditors' Committee or any other Person designated pursuant to the Plan shall be, and they hereby are, authorized, empowered and directed to issue, execute, deliver, file and record any document whether or not such document is specifically referred to in the Plan, the Disclosure Statement or any exhibit thereto, and to take any action necessary or appropriate to consummate the Plan in accordance with its terms, including, without limitation, execution, delivery and performance of the New Credit Facilities as set forth below, without further application to or order of this Court. To the extent that, under applicable non bankruptcy law, any of these actions otherwise would require the consent or approval of the shareholders or boards of directors of the Debtors, this Confirmation Order constitutes such consent, approval and direction.

17.    Without in any manner limiting the foregoing, the execution and delivery, performance, filing or recordation by the Debtors, the Reorganized Debtors, the Creditors' Committee or any other entity or Person designated pursuant to the Plan, of each of the documents, instruments, agreements, notes or filings contemplated by or necessary in connection with consummation of the Plan are hereby authorized and approved. On the Effective Date, all documents and all other agreements entered into or issued pursuant to the Plan, including without limitation any documents and all other agreements entered into or issued pursuant to the New Credit Facilities (the "New Credit Facilities Documents"), shall become effective, binding, and enforceable upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously. The provisions of Fed.R.Bankr.P.

23

7070 are specifically made applicable for such a situation and may be used in an appropriate situation. The Debtors are hereby authorized and directed to make all payments and distributions required under the Plan and to implement the Plan in all respects (including the payment of any fees and/or expenses or indemnities in connection with the New Credit Facilities).

Binding Effect; Effectiveness; Successors and Assigns

18.     Notwithstanding Fed.R.Bankr.P. 3020(c), 6004(g), 7062, 8001, 8002 or otherwise, on the Effective Date, the terms of the Plan, the Plan Supplement and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all holders of Claims or Equity Interests (irrespective of whether (i) such Claims or Equity Interests are Impaired under the Plan, and whether or not if Impaired, such holder accepted the Plan, (ii) the holders of such Claims or Equity Interests (a) accepted or were deemed to have accepted the Plan, or (b) rejected or were deemed to have rejected the Plan, (iii) the holders of such Claims or Equity Interests have filed proofs of claim or interest in the Chapter 11 Cases, and (iv) the holders of such Claims or Equity Interests are receiving any distributions under the Plan), all Persons and Entities that are party to or subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Person or Entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors and the respective heirs, executors, administrators, successors or assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, of any of the foregoing.

Limited Substantive Consolidation

19.     The limited substantive consolidation of the U.S. Debtors' Estates set forth in Article IV.A of the Plan is approved in its entirety solely for the purposes of voting on the Plan, confirmation thereof and distributions in effectuation thereof.

24

Operation of the Debtors Between the Confirmation Date and the Effective Date

20.    The Debtors shall continue to operate as debtors in possession in the ordinary course, consistent with past practice, subject to the supervision of this Court and pursuant to the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure during the period from the Confirmation Date through and until the Effective Date.

Continued Corporate Existence; Vesting of Assets in the Reorganized Debtors

21.    On and after the Effective Date, the Reorganized Debtors shall remain in existence on the terms and conditions of the Plan and this Confirmation Order.

Additional Transactions

22.    The transactions contemplated by Article IV.B.2 of the Plan, and set forth in the Plan Supplement are approved, and the Debtors and Reorganized Debtors and their officers are authorized and directed to take such actions as may be necessary and appropriate to effectuate the relevant transactions, including, without limitation, executing such documents as may be reasonably required in order to effectuate the transactions, including but not limited to the New Credit Facilities Documents (including, but not limited to, credit agreements, guarantee agreements, pledge and security agreements, mortgages and deeds of trust, UCC financing statements and deposit account control agreements).    On and after the Effective Date, the Reorganized Debtors may undertake transactions as may be necessary or appropriate under the circumstances.    Such transactions may include one or more mergers, sales, consolidations, restructurings, acquisitions, dispositions, liquidations or dissolutions, as may be determined by the Reorganized Debtors. The actions to effect these transactions may include:  (a) the execution and delivery of appropriate agreements or other documents of merger, sale, consolidation, restructuring, disposition, liquidation or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law and such

25

other terms to which the applicable entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable entities may agree; (c) the filing of appropriate certificates or articles of merger, consolidation, incorporation, formation or dissolution pursuant to applicable state law; and (d) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law. Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing and recording any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the transactions.

Treatment Is In Full Satisfaction

23.      The treatment set forth in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each Entity holding a Claim or an Equity Interest may have in or against the Debtors, the Estates, the Reorganized Debtors or their respective property.   This treatment supersedes and replaces any agreements or rights those Entities may have in or against the Debtors, the Estates, the Reorganized Debtors or their respective property.

Cancellation of Senior Notes, Subordinated Notes, Convertible Subordinated Debentures, and Equity Interests

24.      On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing the Senior Notes Claims, Subordinated Notes Claims, Convertible Subordinated Debentures Claims, Convertible Trust Guarantees and Equity Interests shall be canceled without any further action by any party and the

26

obligations of the Debtors thereunder or in any way related thereto shall be discharged. Classes 6, 7 and 8 shall neither receive nor retain property under the Plan.

Issuance of Securities and Execution of Related Documents

25.    On the Effective Date, the Reorganized Debtors shall issue or reserve for issuance all securities required to be issued pursuant the Plan, in the manner provided for in the Plan, which securities shall be distributed in accordance with the Plan.

26.    On the Effective Date, as set forth in Article IV.E.5 of the Plan, New Dura shall be a publicly reporting company under the Securities Exchange Act of 1934, as amended.

Corporate Governance, Directors and Officers and Corporate Action

27.    On or prior to the Effective Date, the Debtors shall file and serve an amendment to the Plan Supplement listing the identity of any individual, selected after the date hereof and prior to the Effective Date, proposed to serve on the New Board.

28.    On the Effective Date, the Reorganized Debtors shall file, as applicable, the New Organizational Documents with the appropriate state authorities in accordance with applicable state law.

29.    The structure and composition of the New Board and compensation of the members thereof shall be as set forth in the Plan and Plan Supplement. The Debtors' current management will continue as the management of the Reorganized Debtors, subject to review of the New Board. Each such director, officer and member shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents, or other constituent documents or the Delaware General Corporation Law. Pursuant to section 1129(a)(5)(A)(ii) of the Bankruptcy Code, this Court approves as consistent with the interests of creditors and Equity Interest holders and with public policy the selection, election, and/or continuance, as the case may be, of these individuals; *provided, however,* that nothing set forth herein shall prevent any of

27

the foregoing individuals from resigning or from being removed or replaced as an officer or director without further order of this Court. On the Effective Date, the operation of each Reorganized Debtor shall become the general responsibility of the officers and directors of that Reorganized Debtor.

30.     On the Effective Date (or on the Confirmation Date with respect to any actions taken prior to the Effective Date), the adoption and filing (as necessary) of the New Organizational Documents not otherwise specifically set forth in this Confirmation Order or the Plan, as the case may be, and all other approvals and corporate actions contemplated by the Plan and this Confirmation Order and not otherwise specifically enumerated in this Confirmation Order shall be authorized and approved in all respects (subject to the provisions hereof and to the provisions of the Plan). All matters provided for herein or in the Plan involving the corporate structure of the Reorganized Debtors and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity holders or directors of the Debtors or the Reorganized Debtors.

Treatment of Claims of DIP Lenders

31.     The superpriority administrative claims granted to the DIP Lenders pursuant to the Final DIP Orders shall continue through the Effective Date. In accordance with Article II.B of the Plan, and without limiting the generality of such section, simultaneously with the closing of the New Credit Facilities (and in no event on any date later than the Effective Date), all of the Debtors' obligations to the DIP Lenders pursuant to the DIP Facility, other than those surviving obligations set forth in Article IX.D.4 of the Plan, shall be fully satisfied in Cash in accordance with the terms of the DIP Facility, and cash collateral with respect to letters of credit outstanding

28

on the Effective Date shall be provided in accordance with the terms of the DIP Facility in full and final satisfaction of such obligations.

New Credit Facilities

32.    The New Credit Facilities (including the transactions contemplated thereby, such as any supplementation or additional syndication of the New Credit Facilities, and all actions to be taken, undertakings to be made, liens granted and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) are hereby authorized and approved.  The Reorganized Debtors are authorized to enter into and execute the New Credit Facilities Documents (including, but not limited to, credit agreements, guarantee agreements, pledge and security agreements, mortgages and deeds of trust, UCC financing statements and deposit account control agreements) and such other documents, instruments, agreements, notes or filings as required under the New Credit Facilities or which the New Credit Facilities lenders may reasonably require to effectuate the treatment afforded to such lenders pursuant to the New Credit Facilities without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any person or entity (other than as expressly required by the New Credit Facilities).  The liens and security interests to be granted by the Reorganized Debtors pursuant to the terms of the New Credit Facilities (including, but not limited to, credit agreements, guarantee agreements, pledge and security agreements, mortgages and deeds of trust, UCC financing statements and deposit account control agreements) shall be deemed perfected on the Effective Date without the requirement of any additional filing, subject only to such liens and security interests as may be permitted under the New Credit Facilities.  The Reorganized Debtors may use the New Credit Facilities for any purpose permitted thereunder, including the funding of obligations under the Plan, such as the payment of Administrative

K&E 12254340.25
RLF1-3282747-1

Claims, and satisfaction of ongoing working capital needs.  Upon the Effective Date, the jurisdiction and choice of law provisions in the New Credit Facilities Documents shall govern such documents.

33.    The Debtors may enter into the New Credit Facilities on the Effective Date only after consultation with the Creditors' Committee and Second Lien Group.

New Credit Facilities Liens

34.    The New Credit Facilities will be secured, as applicable, by first priority and second priority perfected liens on the assets of the Reorganized Debtors as set forth in the New Credit Facilities Documents.    The security interests and liens granted pursuant to, or in connection with, the New Credit Facilities (and all documents, instruments and agreements related thereto and annexes, exhibits and schedules appended thereto) shall constitute, as of the Effective Date, legal, valid and duly perfected first priority liens and security interests on and in the collateral specified therein, subject only, where applicable, to the pre-existing liens and security interests specified or permitted in the New Credit Facilities or the documents, instruments or agreements contemplated thereby.  On the Effective Date, all of the liens and security interests to be created under, or in connection with, the New Credit Facilities shall be deemed created and shall be valid and perfected and shall afford to the secured party all remedies for default customarily granted to the holder of such security interest including, without limitation, a private power of sale and right to nonjudicial foreclosure, without any requirement of filing or recording of financing statements, mortgages or other evidence of such liens and security interests and without any approvals or consents from governmental entities or any other persons and regardless of whether or not there are any errors, deficiencies or omissions in any property descriptions attached to any filing and no further act shall be required for perfection of

30

liens and security interests. Notwithstanding the foregoing, the parties granting such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of state, provincial, federal, or other law (whether foreign or domestic) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

<u>Release of Liens</u>

35.     Except as otherwise provided in this Confirmation Order or the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, and/or concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the Debtors' Estates (including the DIP Lenders' liens) shall be fully released, and discharged (except for charging Liens of the Indenture Trustees to the extent the Indenture Trustee's fees and expenses are not paid pursuant to the Plan), and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns; provided, however, that this provision shall not prevent liens from attaching to the Reorganized Debtors' assets as provided for by the Plan, any New Credit Facilities or otherwise necessary or appropriate to implement the Plan.

<u>Preparation, Delivery and Execution of Additional Documents By Third Parties</u>

36.     All holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

31

**K.**    <u>Release, Injunctive, Exculpation and Related Provisions</u>

37.    The following provisions of Article IX of the Plan shall be, and hereby are approved in their entirety:

> ***Releases by the Debtors.*** **Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, but not limited to: (a) the discharge of debt and all other good and valuable consideration paid pursuant to the Plan or otherwise; and (b) the services of the Debtors' present and former officers and directors as of the Petition Date or thereafter in facilitating the expeditious implementation of the restructuring contemplated by the Plan, and in view of the indemnification pursuant to Article V.D; each of the Debtors hereby provides a full discharge and release to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtors) and their respective properties from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors or the Reorganized Debtors would have been legally entitled to assert (whether individually or collectively) or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or Estates and further including those in any way related to the Commitment Letter, Exit Facility, New Money Second Lien Loan, New Organizational Documents, Chapter 11 Cases, the Original Plan or the Plan;** *provided, however,* **that the foregoing provisions of this Article IX.B.1 shall not operate to waive or release from any Causes of Action expressly set forth in and preserved by the Plan or Plan Supplement or any defenses thereto;** *provided, further, however* **that the foregoing provisions of this Article IX.B.1 shall not operate to waive or release any Causes of Action accrued by the Debtors in the ordinary course of business against holders of Other General Unsecured Claims.**

K&E 12254346.25
RLF1-3282747-1

***Third Party Release*. Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, the Releasing Parties hereby provide a full discharge and release (and each Entity so released shall be deemed released by the Releasing Parties) to the Releasees and each of their respective Representatives (each of the foregoing in its individual capacity as such), and their respective property from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including those in any way related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, Original Plan, Disclosure Statement, Commitment Letter, New Organizational Documents, New Money Second Lien Loan, Exit Credit Facility or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; *provided, however*, that the foregoing provisions of this Article IX.B.2 shall not operate to waive or release any of the Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or Plan Supplement or any defenses thereto; *provided, further, however*, that the foregoing provisions of this Article IX.B.2 shall not operate to waive or release any Allowed Claims of Releasing Parties treated under the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article IX.B pursuant to Fed.R.Bankr.P. 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all holders of Claims; (c) fair, equitable, and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Debtors, Reorganized Debtors or Releasing Parties asserting any Claim or Cause of Action thereby released.**

***Exculpation*. Notwithstanding anything contained in the Plan**

to the contrary, the Exculpated Parties shall neither have nor incur any liability to any Entity for any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors or the Reorganized Debtors would have been legally entitled to assert (whether individually or collectively) or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or Estates and further including those in any way related to the Commitment Letters, New Organizational Documents, Chapter 11 Cases, the Original Plan, or the Plan arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, New Money Second Lien Loan, Exit Credit Facility, the Disclosure Statement, New Organizational Documents, Commitment Letters, DIP Facility, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan, Original Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; *provided, however*, that the foregoing provisions of this Article IX.C shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; *provided, further, however* that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents; *provided, further, however* that the foregoing provisions of this Article IX.C shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or Plan Supplement or any defenses thereto.

K&E 12254346.25
RLF1-3282747-1

L.     **No Successor Liability**

38.     Except as otherwise expressly provided in the Plan or this Confirmation Order, none of the Released Parties shall be determined to be successors to any of the Debtors or to any Entity for which the Debtors or the Reorganized Debtors may be held legally responsible, by reason of any theory of law or equity, and none can be responsible for any successor or transferee liability of any kind or character. The Released Parties shall not have any obligation, responsibility, or liability to perform, pay, or indemnify creditors or otherwise have any responsibilities for any liabilities or obligations of the Debtors or the Reorganized Debtors, whether arising before, on, or after the Confirmation Date, except as otherwise expressly provided in the Plan or this Confirmation Order.

M.     **Existing Injunction and Stays Remain in Effect until Effective Date**

39.     All injunctions or stays provided in, or in connection with, the Chapter 11 Cases, whether pursuant to sections 105 or 362 of the Bankruptcy Code, or any other applicable law or court order, in effect immediately prior to the Confirmation of the Plan, shall remain in full force and effect thereafter if so provided by this Confirmation Order, the Plan or their own terms. Nothing herein shall bar the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order.

N.     **Discharge**

40.     The discharge of Claims and termination of Equity Interests set forth in Article IX.E of the Plan are hereby approved.

O.     **Extension of Second Lien Preference Action**

41.     The time period for the Creditors' Committee to file any complaint or proper pleading relating to any potential action seeking to invalidate, subordinate or otherwise challenge the Prepetition Second Priority Liens is extended through and including the Effective Date.

35

**P.**  **Failure to Consummate the Plan**

42.    If the consummation of the Plan does not occur, then the provisions of Article VIII.C of the Plan shall govern.

**Q.**  **Retention of Jurisdiction**

43.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and sections 157 and 1334 of title 28 of the United States Code, notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan after the Effective Date, to the fullest extent permitted by law, on the terms set forth in Article X of the Plan; *provided, however*, that the foregoing shall not apply to matters arising out of the New Credit Facilities.

**R.**  **Limited Survival of Creditors' Committee Post-Effective Date**

44.    In addition to those situations described Article XI.A.3 of the Plan, which are approved pursuant to this Confirmation Order, the Creditors' Committee shall continue to survive after the Effective Date for the limited purpose of responding to creditor inquiries made within 90 days from the Effective Date. All reasonable fees and expenses incurred therein shall be paid by the Debtors or Reorganized Debtors, as applicable, without further order of the Bankruptcy Court.

**S.**  **Payment of Statutory Fees**

45.    All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable. From and after the Effective Date, the Debtors and the Reorganized Debtors shall be jointly liable for and shall pay the fees under 28 U.S.C. § 1930 assessed against the Reorganized Debtors' Estates under 28 U.S.C. § 1930 until entry of an order closing the  Chapter 11 Cases.

K&E 12254346.25
RLF1-3282747-1

In addition, the Debtors or the Reorganized Debtors (as the case may be) shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines, until entry of an order closing or converting the Chapter 11 Cases. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an administrative expense claim against the Debtors and their Estates.

**T.    Section 346 Exemption**

46.    Section 346 of the Bankruptcy Code shall apply to any taxes that may potentially result from, or may be related to, the events, transactions and occurrences of these Chapter 11 Cases, and, in particular, pursuant to section 346(j) of the Bankruptcy Code, no state or local tax imposed on, or measured by, income shall be imposed on the Debtors or the Reorganized Debtors, including, but not limited to, franchise taxes, to the extent that any such franchise taxes are measured by book or taxable income of the Debtors or the Reorganized Debtors, as result of the forgiveness or discharge of indebtedness of the Debtors arising from the confirmation and consummation of this Plan, including, but not limited to, undertaking the transactions contemplated by any provision of the Plan or this Confirmation Order.

**U.    Section 1146 Exemption**

47.    The issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, Lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, if any, and all loan documents executed in connection with the New Credit Facilities shall be exempt from documentary stamp taxes, intangible taxes, mortgage recording taxes, transfer taxes, and all other taxes pursuant to section 1146(a) of the Bankruptcy Code. All governmental officials and agents shall forego the

37

assessment and collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment. In addition, section 1146(a) of the Bankruptcy Code shall apply on the terms set forth in Article XI.I of the Plan.

## V.    References to Plan Provisions

48.    The Plan is confirmed in its entirety and hereby incorporated into this Confirmation Order by reference. The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of, or otherwise affect, the validity, binding effect and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect and enforceability as if fully set forth in this Confirmation Order.

## W.    Headings

49.    Headings utilized herein are for convenience and reference only, and shall not constitute a part of the Plan or this Confirmation Order for any other purpose.

## X.    Effect of Conflict Between Plan and Confirmation Order

50.    If there is any direct conflict between the terms of the Plan or the Plan Supplement and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

## Y.    Post-Confirmation Notices and Bar Dates

*Notice of Entry of this Confirmation Order*

51.    In accordance with Fed.R.Bankr.P. 2002 and 3020(c), within five business days of the date of entry of this Confirmation Order, the Debtors (or their agents) shall give notice of the entry of this Confirmation Order (the "Confirmation Notice") by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with

the Confirmation Hearing Notice; *provided, however*, that no notice or service of any kind shall

be required to be mailed or made upon any person to whom the Debtors mailed a Confirmation

Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved,

left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors

have been informed in writing by such person, or are otherwise aware, of that person's new

address. To supplement the notice described in the preceding sentence, within fifteen business

days of the date of this Confirmation Order the Debtors shall publish the Confirmation Notice in

the *National Post, The New York Times, Detroit Free Press, Detroit News, Globe and Mail, Wall

Street Journal,* and *Automotive News.*

52.    Mailing and publication of the Confirmation Notice in the time and manner set

forth in the preceding paragraph are good and sufficient notice under the particular

circumstances and in accordance with the requirements of Fed.R.Bankr.P. 2002 and 3020(c), and

no other or further notice is necessary.

*Notice of Entry of the Effective Date*

53.    On or before the fifth business day following the Effective Date, notice of entry of

this Confirmation Order and the occurrence of the Effective Date shall be mailed by the

Reorganized Debtors to all creditors, equity security holders and all other parties which are

entitled to notice.

Bar Date for Requests for Administrative Claims

54.    Requests for administrative expenses pursuant to section 503 of the Bankruptcy

Code, from parties other than Retained Professionals and the DIP Lenders, must be filed with

both this Court and the Voting Agent within sixty (60) days of the date of entry of this

Confirmation Order (the "Administrative Claim Bar Date"); *provided, however*, that parties

requesting compensation or expense reimbursement for making a substantial contribution in the

Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code must file an application with this Court on or prior to the Administrative Claim Bar Date, or be forever barred from seeking such compensation or expense reimbursement.

55.    The deadline for submission by Retained Professionals of applications for Bankruptcy Court approval of Accrued Professional Compensation set forth in Article XI.B.2 of the Plan (the "Final Fee Application Deadline") is hereby approved.

56.    The Confirmation Notice shall conspicuously set forth the Administrative Claim Bar Date and Final Fee Application Deadline, which shall constitute good and sufficient notice of the bar date and, in accordance with the requirements of Fed.R.Bankr.P. 2002 and 3020, no other or further notice of the bar date is necessary.

## Z.    **Non-Material Changes**

57.    Article XI.D of the Plan shall govern post-Confirmation Plan modifications.

## AA.    **Resolution of Objections**

### *Automotive Components Holdings, LLC*

58.    For the avoidance of doubt, notwithstanding Article IX.F ("Injunction") of the Plan, any other provision of the Plan, any supplement to the Plan, or the other provisions of this Confirmation Order, the assertion of setoff and recoupment rights by Automotive Components Holdings, LLC, with regard to mutual prepetition claims between it and the Debtors shall not be enjoined or impaired.

### *Hazen Transport, Inc.*

59.    Notwithstanding anything to the contrary contained herein or in the Plan, any effective date of the rejection of the Transportation Service Agreement dated February 15, 2005, between Hazen Transport, Inc. and Atwood Mobile Products, Inc., and the effect of any such effective date of rejection on any claims asserted by Hazen Transport, Inc. for amounts due

40

under the Transportation Service Agreement shall be reserved and determined by this Court at the time such a claim, if any, is filed against the Debtors and brought before this Court for hearing. The Debtors reserve all rights and defenses with respect to any such claim asserted by Hazen Transport, Inc.

### *Internal Revenue Service*

60.     Notwithstanding any provision to the contrary in the Plan and this Confirmation Order, confirmation of the Plan shall not affect any setoff and recoupment rights of the IRS. Notwithstanding the language appearing in the Plan at Article II.C.1(b), the total value of any Allowed Priority Tax Claims held by the Internal Revenue Service shall include interest at the rate and method specified in 26 U.S.C. §§ 6621 and 6622.

### *Karl Storrie and David Bovee*

61.     Notwithstanding anything to the contrary contained herein or in the Plan, any effective date of the rejection of the Debtors' Supplemental Executive Retirement Plan, effective January 1, 2003 (the "SERP") as applicable to Karl Storrie ("Storrie") and David Bovee ("Bovee"), and the effect of any such effective date of rejection on the claims of Storrie and Bovee for payments pursuant to the SERP shall be reserved and determined by this Court at the time of the hearing on the motions of Storrie and Bovee that are pending before this Court for allowance and payment of administrative expenses [Docket No. 2231 and 2232].

### *Lear Corporation*

62.     For the avoidance of doubt, Articles IX.B.2 ("Third Party Release") and IX.F ("Injunction") shall not alter or amend the rights of Lear Corporation under: (i) any executory contract between the Debtors and Lear Corporation and/or Johnson Electric assumed by the Debtors on or prior to the Effective Date; and (ii) any contract between the Debtors and Lear Corporation and/or Johnson Electric entered into after the Petition Date.

41

### Magna Donnelly Corporation

63.    Nothing in the Plan or Disclosure Statement or this Confirmation Order (or in any exhibit, supplement, or amendment to any Plan,  Disclosure Statement or this Confirmation Order) shall release, discharge, enjoin or impact in any way: (i) the claims, counterclaims, defenses or affirmative defenses of Magna (as "Magna" is defined in the stipulation between the Debtors and Magna Donnelly Corporation [Docket No. 2449] (the "Magna Stipulation")) asserted in the Counterclaim (as "Counterclaim" is defined in the Magna Stipulation) and/or other claims or defenses against the Debtors and/or the Reorganized Debtors and/or their successors-in-interest that Magna may possess (now or in the future) related to the subject matter of the District Court Action (as "District Court Action" is defined in the Magna Stipulation) and/or (ii) any claims, demands, counterclaims, rights, actions, causes of action, suits, damages, remedies, defenses, or affirmative defenses that Magna may have (now or in the future, and in any capacity whatsoever) against the Debtors and/or the Reorganized Debtors and/or their successors-in-interest based on any act, omission, transaction, or occurrence existing (or continuing to exist) after the Effective Date; provided, however, that nothing in this paragraph shall: (x) entitle Magna to a recovery from the Debtors for any prepetition monetary claims for which Magna did not comply with the requirements of the *Order Establishing Deadline for Filing Proofs of Claim Approving Form and Manner of Notice Thereof* [Docket No. 750], or (y) prejudice, in any way, Magna's right to move this Court for leave to file a late-filed proof of claim and to seek treatment *pari passu* to all timely-filed proofs of claim, in accordance with the provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and/or the Local Rules of this Court.  Except as otherwise provided in this Paragraph, pursuant to the Magna Stipulation and notwithstanding anything to the contrary in any notice, pleading, Plan, this Confirmation Order, or other order of this Court, Magna shall not be required to seek this Court's

approval (though an application for allowance of any administrative claim, or otherwise) in order to assert and/or protect Magna's monetary claims in the District Court Action.

### Michigan Workers' Compensation Agency

64.    For the avoidance of doubt, the Debtors' and Reorganized Debtors' obligations under Article V.H of the Plan include workers' compensation obligations related to Gel, Inc., which entity was purchased by the Debtors in 1997.

### Oracle Corporation

65.    Notwithstanding anything to the contrary in this Confirmation Order, the Plan, or Plan Supplement, with regard to the unexpired prepetition contracts among the Debtors and Oracle Corporation, successor in interest to Hyperion Software Operations, Inc. (d/b/a Hyperion Software Corporation) and Hyperion Solutions Corporation (collectively, "Oracle"): (i) the Software License Agreement (Dura-Trident), dated March 9, 1998, the Amendment to the Software License Agreement (Dura-Trident), dated September 9, 22, 1998, and the Upstream Software Terms and Conditions (Dura), dated April 1, 2000 (each, an "Assumed Oracle Agreement", and collectively, the "Assumed Oracle Agreements") shall be assumed pursuant to the Plan, *provided, however*, that any such assumption of any Assumed Oracle Agreement shall be conditioned upon the parties' reconciliation and agreement regarding the proper cure amount with respect to the related Assumed Oracle Agreement; and (ii) the Software and License Services Agreement (Dura), May 10, 2006, shall be rejected pursuant to the Plan.

### U.S. Environmental Protection Agency

66.    Any relief provided under the Plan or this Confirmation Order to non-debtors shall not release, discharge, enjoin, or preclude any liability of such non-debtors to a governmental unit under any federal, state, or local environmental laws.

43

*U.S. Securities and Exchange Commission*

67.     Notwithstanding any language to the contrary contained in the Plan or this Confirmation Order, Article IX.C of the Plan shall not release any non-debtor, including any current and/or former officer and/or director of the Debtors and/or any other non-debtor included in the Exculpated Parties, from liability to the United States Securities and Exchange Commission, in connection with any legal action or claim brought by such governmental unit against such person(s).

## BB.    Recognition in Canada

68.     The Court requests the aid and recognition of any court or any judicial, regulatory or administrative body in any province or territory of Canada and the Federal Court of Canada and any judicial, regulatory or administrative tribunal or other court constituted pursuant to the Parliament of Canada or the legislature of any province and any court or any judicial, regulatory or administrative body of any other nation or state to act in aid of and to be complementary to this Court in carrying out the terms of this Confirmation Order.

[remainder of page intentionally blank]

K&E 12254346.25
RLF1-3282747-1

**CC.    Final Order**

69.    This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

70.    Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon its entry.

71.    If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

**DD.    Authorization to Consummate**

72.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions precedent to the Effective Date set forth in Article VIII of the Plan.

IT IS SO ORDERED.

Wilmington, Delaware
Dated: _____ , 2008

Honorable Kevin J. Carey
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

**APPEAL TRANSMITTAL SHEET**

Case Number: _____  ○ BK   ○ AP

    If AP, related BK Case Number: _____

Title of Order Appealed:

_____

        Docket Number: _____        Date Entered: _____

Item Transmitted:   ○ Notice of Appeal              ○ Motion for Leave to Appeal
                   ○ Amended Notice of Appeal    ○ Cross Appeal
             Docket Number: _____      Date Filed: _____

\*Appellant/Cross Appellant:                    \*Appellee/Cross Appellee

_____     _____

Counsel for Appellant:                          Counsel for Appellee:

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

*If additional room is needed, please attach a separate sheet.*

Filing Fee paid?    ○ Yes    ○ No

IFP Motion Filed by Appellant?   ○ Yes    ○ No

Have Additional Appeals to the Same Order been Filed?  ○ Yes    ○ No
    If so, has District Court assigned a Civil Action Number?   ○ Yes  ○ No   Civil Action # _____

Additional  Notes:

_____

_____        By: _____

Date                                                                        Deputy Clerk

_____

                                    FOR USE BY U.S. BANKRUPTCY COURT

Bankruptcy Court Appeal (BAP) Number: _____
7/6/06